UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SANDRA C., : | |
|     Plaintiff, : | |
| : | |
| v. : | C.A. No. 18-375JJM |
| : | |
| ANDREW M. SAUL, : | |
| COMMISSIONER OF SOCIAL SECURITY, : | |
|     Defendant. : | |

# REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

In June 2013, Plaintiff Sandra C. stopped working at a group home for the developmentally disabled after hurting her neck and shoulders when a patient pulled her arms; soon after, in July 2013, she fell downstairs and fractured her coccyx. Since these incidents, she has been diagnosed with and suffered from worsening fibromyalgia and neuropathy affecting her legs, shoulders and spine, as well as carpal tunnel syndrome ("CTS") and depression and anxiety. Before the Court is her motion to reverse the Commissioner's decision denying her Disability Insurance Benefits ("DIB") application under 42 U.S.C. § 405(g) of the Social Security Act (the "Act"). She contends that the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC")[1] finding lacks the support of substantive evidence. Defendant Andrew M. Saul ("Defendant") has filed a motion for an order affirming the Commissioner's decision. The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    <u>Background</u>**

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

A.   **Plaintiff's Background**

Plaintiff was forty-three years old when she stopped working in June 2013. Tr. 101. She has a high school diploma and a certified nursing assistant ("CNA") certificate. Tr. 46, 226. In addition to working as a CNA, she has also worked in a bakery and as a security guard. Tr. 85. During the period under review, she was occasionally homeless and is consistently described by an array of treating providers as thin, distressed or ill-looking in appearance; the record repeatedly reflects such objective observations as "uncomfortable, moves slowly," "chronically ill-appearing," "+tenderness along pressure points-buttocks, back, neck," "+muscle spasm back and right leg," "antalgic gait," "severely reduced ROM" and "severe/uncontrolled depression/anxiety contributing to worsening pain," as well as such subjective symptoms as "exquisitely tender" and "excessive fatigue where it is difficult for her to get out of bed." Tr. 357, 530, 532, 534, 543, 550, 568, 619; see Tr. 610 ("patient reports functioning as extremely difficult"). The treating record echoes Plaintiff's statements that she found sitting and driving difficult after she fractured her coccyx and that limitations affecting her ability to buy and prepare food have affected her eating. Tr. 48, 68-69, 345; see also Tr. 396 (patient advised of adverse effects of being underweight), Tr. 539 ("malnourished" in appearance).

B.   **Medical and Opinion Evidence**

Only a portion of Plaintiff's treating record is in the file that was reviewed on behalf of the Social Security Administration ("SSA") by the non-examining physicians (Dr. Youssef Georgy and Dr. Mitchell Pressman), the non-examining psychologist (Dr. Jeffrey Hughes) and the non-examining psychiatrist (Dr. H. Thomas Unger); this portion of the file amounts to approximately 220 pages of material. Tr. 308-526. These materials reflect the treatment following the fractured coccyx caused by the fall, including that Plaintiff was in pain for almost a

2

month before the fracture was diagnosed, but which also suggest that, by November 2013, the pain seemed to improve following multiple injections. Tr. 308-59. In March 2015, Dr. Karmela Chan of Rheumatology Associates diagnosed fibromyalgia; however, except for the scan that diagnosed the coccyx fracture, MRIs were normal, while physical examinations yielded largely normal observations. E.g., Tr. 385 (right side of neck tender, rest normal); Tr. 395-96 (strength, range of motion all normal); Tr. 441 (moderate discomfort and tenderness in spine, but range of motion all normal). In September 2015, Plaintiff went to the emergency room complaining of back spasms but other than "diffuse [back] spasm," the examination was normal. Tr. 467. In this portion of the file, there are few references to depression or anxiety and virtually no mental health treating records. See Tr. 107, 116.

In addition to these treating records, this portion of the file also has the two SSA consulting examination reports prepared in connection with Plaintiff's application. Dr. Daniel Regan, a family practitioner, examined Plaintiff on April 28, 2016; his report references the diagnosis of CTS and the right shoulder surgery, although no treating records reflecting these conditions had been submitted as of the date of his review. Tr. 520. His examination confirmed tender trigger points, low back tenderness and the inability to squat or bend to touch toes; while he found no signs to confirm CTS,[2] Dr. Regan endorsed the diagnoses of fibromyalgia and neuropathy in the legs, coccyx, neck and shoulders, causing limits in the ability to lift, use the hands over the shoulder, bend or engage in prolonged walking. Tr. 521-22. The SSA also

---

[2] Dr. Joseph Izzi diagnosed and treated CTS in 2013. Tr. 594. For reasons not disclosed by the record, his treating notes were requested but not submitted until Plaintiff provided them in 2017. According to his notes, after several injections, Plaintiff's hand discomfort improved. Tr. 587. An EMG performed in 2014 was normal. Tr. 355. Dr. Regan's examination did not confirm the CTS diagnosis. Tr. 522. Plaintiff stopped treating with Dr. Izzi for two years. When she went back in 2016, his examination suggested that CTS had returned; a confirming EMG was ordered but there seems to be no further treatment and Plaintiff failed to appear for the next appointment. Tr. 583, 601-02. During the hearing, Plaintiff did not testify to ongoing difficulties with CTS. Tr. 37. If Plaintiff's appeal from the ALJ's decision were limited to CTS, I would affirm the denial of benefits.

engaged a psychologist, Dr. Romina Dragone-Hyde, to prepare a consulting examination, which she did on December 23, 2015. Tr. 481. Her report reflects an extensive clinical interview that uncovered significant mental health treatment in the past, including an in-patient stay in the early 1990s and an out-patient course of treatment in 1997 (both at Butler Hospital), due to depression, anxiety and suicidal ideation. Tr. 481-83. Dr. Hyde recorded many abnormal findings on mental status examination, including issues with attention and memory; she endorsed diagnoses of depression and anxiety. Tr. 484.

At the initial phase, Dr. Georgy (the non-examining physician) and Dr. Hughes (the non-examining psychologist) examined this partial record and found no severe physical or mental limitations; however, Dr. Georgy did not see the Regan consulting report because it was not prepared until after his file review, while Dr. Hughes rejected the conclusions in the Hyde consulting report because Plaintiff had stopped taking medications and seeing a psychiatrist in 2014 and had not reported that history (according to Dr. Hughes) to Dr. Hyde.[3] Tr. 106-07. On reconsideration, Dr. Unger (the non-examining psychiatrist) concurred with Dr. Hughes. Tr. 117. By contrast, the non-examining physician on reconsideration, Dr. Pressman, who had access to the recently procured Regan consulting report, accepted the diagnosis of fibromyalgia as a severe impairment; he found that fibromyalgia was causing significant exertional, postural and other limitations. Tr. 116-20. According to the Disability Explanation, Dr. Pressman's opinion limited Plaintiff to sedentary work. Tr. 121.

After reconsideration was denied on January 29, 2016, almost 140 pages of new material were added to the record. Much of it was submitted directly by Plaintiff's attorney. These records include the entirety of the Tri-Town Community Action records from 2016 and 2017

---

[3] This conclusion is of questionable reliability – the Hyde report indicates that Plaintiff did tell Dr. Hyde that "she is not undergoing any mental health counseling at this time." Tr. 483.

4

(including records for the primary care physician, Dr. Joanna Brown, as well as for Nurses Danielle Sheehan and Saima Qamar and others), which reflect a material worsening of Plaintiff's symptoms related to fibromyalgia (and depression and anxiety) after Dr. Pressman's file review. They include the 2013-2014 records for Dr. Joseph Izzi, who diagnosed and treated Plaintiff for CTS and thumb pain, and for Drs. John Czerwein and Michel Arcand, of the Center for Orthopaedics, who treated Plaintiff for neck and shoulder pain, administered shoulder injections and performed shoulder surgery in 2014. And they include 2016 and 2017 records for the Warwick Pain Clinic, which reveal that Plaintiff continued to receive tender point and multiple sacroiliac injections for pain control of the areas affected by the 2013 fracture and by fibromyalgia. Tr. 528-644.

## C.     The ALJ's Decision

In the proceedings before the ALJ, the following impairments were accepted as severe at Step Two: "sacroili[i]tis, neuropathy in lower extremities, bilateral [CTS], cervical and shoulder pain, fibromyalgia, depression, and anxiety." Tr. 14. Despite these impairments, the ALJ found that Plaintiff was able to cook, do some cleaning, drive locally, dress, bathe and "do activities of daily living without considerable difficulty." Tr. 16. Based on this finding that "the claimant's objective evidence . . . shows the claimant to be more active than the limitations set forth in Dr. Brown's assessment," Tr. 21, as well as on the supposed inconsistency between Dr. Brown's assessment and "the record as a whole," the ALJ rejected the opinion of Plaintiff's primary care physician, whose treating notes (and those of her treating colleagues, Nurses Sheehan and Qamar) contain consistent and objective observations of "worsening" (e.g., Tr. 534, 610) symptoms of fibromyalgia and depression and anxiety, including slow movement, limited range

5

of motion, muscle spasm, tenderness and abnormal findings on mental status examination. E.g., Tr. 528-57, 610-20.

The ALJ relied instead on the non-examining opinion of Dr. Pressman,[4] who did not see any of the treating records of Dr. Brown and her colleagues; nor did Dr. Pressman have access to the records for Dr. Izzi, who diagnosed and treated Plaintiff's CTS; nor did Dr. Pressman see the treating records for Drs. Czerwein and Arcand, who performed shoulder injections and surgery; nor did Dr. Pressman have access to the later records for the providers at the Warwick Pain Clinic, whose examinations resulted in such abnormal observations as antalgic gait and tenderness and who continued to treat the coccyx area and tender points with injections. Based on the same finding regarding Plaintiff's robust level of activity, the ALJ rejected Plaintiff's subjective statements about the severity of the pain and fatigue. For no reason apparent in the decision, the ALJ also discounted Dr. Regan's consulting examination report, which confirmed the diagnosis of fibromyalgia resulting in limitations in the ability to lift, use the hands over the shoulder, bend or walk. And although the ALJ noted that the SSA non-examining psychologist/psychiatrist (Drs. Hughes and Unger) either ignored or did not see material evidence of mental health issues, and afforded their opinions only "some weight," the ALJ also noted the lack of significant mental health-specific treatment during the relevant period, and afforded only "some weight" to the opinion of the consulting examining psychologist, Dr. Hyde, who had found that Plaintiff has limited short term memory and ability to concentrate, as well as that she suffers from depression and anxiety.

---

[4] Without explaining why he discounted it, the ALJ states that he afforded only "some weight" to Dr. Pressman's opinion. Tr. 21. As a practical matter, it appears that the ALJ effectively afforded Dr. Pressman "great weight" in that he adopted Dr. Pressman's RFC limitations without any material change, except that the ALJ labeled his RFC as permitting "light" work with additional limitations, while Dr. Pressman's RFC was summarized at reconsideration as limiting Plaintiff to sedentary work.

6

With this foundation laid and essentially relying on Dr. Pressman for physical limitations and on his own lay judgment for mental limitations, the ALJ concluded that Plaintiff retained the RFC to perform a restricted range of light work, but only low stress jobs with limited public contact and no crowds. Tr. 17. Based on this RFC and the VE's testimony, the ALJ decided at Step Five that Plaintiff was not disabled. Tr. 23-24.

## II. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the

7

Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g).  Allen v. Colvin, No. CA 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015) (citing Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir.1996)).

### III.    Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

#### A.    The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520.  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's

impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 404.1520(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims). The claimant must prove the existence of a disability on or before the last day of insured status for the purposes of disability benefits. Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982); 42 U.S.C. §§ 416(i)(3), 423(a), 423(c).

### B. Treating Physicians and Other Sources

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(c). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 404.1527(c)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988). The ALJ's decision must articulate the weight given, providing "good reasons" for the determination. See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where

ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). A treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2). If a treating source is not accorded controlling weight, the ALJ must apply the factors listed in 20 C.F.R. § 404.1527(c). As SSR 96-2p provides:

> The notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188 (July 2, 1996). The regulations confirm that, "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(c)(2). However, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

### C. Evaluation of Subjective Symptoms

When an ALJ decides to discount a claimant's subjective statements about the intensity, persistence and severity of symptoms, he must articulate specific and adequate reasons for doing

10

so or the record must be obvious. See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Rohrberg, 26 F. Supp. 2d at 309-10. A reviewing court will not disturb a clearly articulated finding supported by substantial evidence. See Frustaglia, 829 F.2d at 195. If proof of disability is based on subjective evidence so that the credibility determination is determinative, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)). Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017). It directs the ALJ to consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; any other relevant evidence; and whether statements about the intensity, persistence, and limiting effects of symptoms are consistent with the medical signs and laboratory findings. SSR 16-3p, 2017 WL 4790249, at *49465.

**D.     Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen v. Chater, 172 F.3d 31, 36 (1st Cir. 1991). Congress has determined that a claimant will not be considered disabled unless medical and other evidence (e.g., medical signs and laboratory findings) is furnished showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. SSR

16-3p, 2017 WL 4790249, at *49462; 20 C.F.R. § 404.1529(c)(3). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). However, the individual's statements about the intensity, persistence, and limited effects of symptoms may not be disregarded "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms." SSR 16-3p, 2017 WL 4790249, at *49465.

If a treating physician finds that his patient's physical impairment is real, the physician may rely on the claimant's subjective statements regarding the impact of pain on the ability to function in opining to his patient's RFC and the ALJ may not discount an otherwise well-founded opinion on that basis. Ormon v. Astrue, 497 F. App'x 81, 85-86 (1st Cir. 2012). "[T]he statements of the claimant and his doctor must be additive to clinical or laboratory findings" in considering pain's functional implications. Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 21 (1st Cir. 1986); SSR 16-3p, 2017 WL 4790249, at *49465; Gullon v. Astrue, No. 11-cv-099ML, 2011 WL 6748498, at *5-6 (D.R.I. Nov. 30, 2011). It is error for the ALJ to place "an extreme insistence on objective medical finings to corroborate subjective testimony of limitations of function because of pain." Id. at 22.

### IV. Analysis

Plaintiff levels three well-aimed attacks at the foundation of the ALJ's RFC decision. First, she contends that the ALJ erred in principally relying on a non-examining source (Dr. Pressman) whose file review was performed not only without the benefit of a substantial set of records establishing a "worsening" of both fibromyalgia and depression and anxiety, but also without the benefit of the records from two significant treating providers, Dr. Izzi and the physicians from the Center for Orthopaedics (Drs. Czerwein and Arcand). Second, she challenges the sufficiency of the ALJ's pivotal finding that there is objective evidence proving

that she is more active than the limitations in Dr. Brown's opinion would suggest, as well as that there is evidence of activities that clash with her own statements regarding the severity and limiting effect of the pain. Third, and related to the second, she argues that neither of the ALJ's "good reasons" for rejecting the treating source opinion from Dr. Brown can withstand scrutiny. All of these arguments are well founded and each of these errors – collectively and independently – requires remand.[5]

There is no need to linger over the ALJ's error in relying on Dr. Pressman's opinion without calling a medical expert to opine regarding the significance of the many records that Dr. Pressman did not see. It is well settled that remand is required when an ALJ relies on an RFC on the cusp of disability – recall that the SSA treated Dr. Pressman's RFC opinion as limiting Plaintiff to sedentary work – opined to by an SSA non-examining source who lacked access to records reflecting a material worsening of symptoms, such as those from the Tri-Town Community Action physician and nurses, who repeatedly noted "worsening pain," Tr. 534, and "worsening of previously reported symptoms," Tr. 610; see Mary K v. Berryhill, 317 F. Supp. 3d 664, 668 (D.R.I. 2018) ("[c]ourt does not know whether the non-examining state agency physicians would have rendered the same Step 2 opinions if they had all of the medical evidence"); Oviedo v. Colvin, C.A. No. 15-344S, 2016 WL 5794885, at *8 (D.R.I. Sept. 2, 2016), adopted, 2016 WL 5793653 (D.R.I. Oct. 4, 2016) (when treating record establishes impairment that worsened after file review and opinion might be different, remand required). Here, this error is compounded by Dr. Pressman's failure[6] to consider the missing 2013-2014

---

[5] In light of these material errors, the Court has not considered Plaintiff's other arguments.

[6] This use of the word "failure" is not intended to suggest any culpability on the part of Dr. Pressman or the SSA. The file reflects that the SSA requested the Izzi records; it is not clear why they and the Center for Orthopaedics records were not procured until much later.

records, particularly those of Dr. Izzi and Dr. Arcand, which reflect serious and objective shoulder and hand issues. To take just one example, who can say whether Dr. Pressman would have found that Plaintiff could occasionally climb ropes, ladders and scaffolds (a finding that made its way into the ALJ's RFC) if he had seen Dr. Arcand's record, which includes the 2014 surgery on one shoulder and the injections and consideration of surgery on the other. When, as here, the ALJ's RFC is buttressed neither by the opinion of her treating physician, nor that of adequately informed non-treating sources, it is not supported by substantial evidence. Virgen C. v. Berryhill, C.A. No. 16-480 WES, 2018 WL 4693954, at *3 (D.R.I. Sept. 30, 2018). Remand is necessary to allow for an error-free evaluation of the complete record.

As to the second error – the ALJ's finding that Plaintiff was materially more active than is reflected in her statements and in the Brown opinion – a few bedrock principles govern the Court's analysis. It is well settled that the credibility determination is critical when the claim of disability is based on fibromyalgia. Johnson v. Astrue, 597 F.3d 409, 412 (1st Cir. 2009) (fibromyalgia is condition established primarily based on subjective pain); Howcroft v. Colvin, C.A. No. 15–201S, 2016 WL 3063858, at *10-11 (D.R.I. April 29, 2016), adopted, 2016 WL 3072254 (D.R.I. May 31, 2016) (well-supported credibility finding supports rejection of disability claim based on fibromyalgia). Because fibromyalgia's symptoms are largely subjective, the viability of an ALJ's adverse credibility finding is often pivotal to the outcome of a claimant's appeal. Mariano v. Colvin, No. CV 15-018ML, 2015 WL 9699657, at *10 (D.R.I. Dec. 9, 2015), adopted, 2016 WL 126744 (D.R.I. Jan. 11, 2016). Thus, when the disability claim is based on pain caused by an impairment as fibromyalgia, "[a]n ALJ is required to investigate 'all avenues presented that relate to subjective complaints.'" Bowden v. Astrue, No. CA 11-84 DLM, 2012 WL 1999469, at *10 (D.R.I. June 4, 2012) (quoting Avery, 797 F.2d at 28); see

Charpentier v. Colvin, C.A. No. 12-312 S, 2014 WL 575724, at *13 (D.R.I. Feb. 11, 2014) (in fibromyalgia cases, credibility determination is particularly important because of subjective nature of pain). Adjudicators must consider the entire case record, making clear the individual's statements about the intensity and persistence of pain or the effect of pain on the ability to work may not be disregarded solely because they are not substantiated by objective medical evidence. SSR 16-3p, 2017 WL 4790249, at *49464; Mariano, 2015 WL 9699657, at *10.

In this case, the record establishes that Plaintiff can do no more than what she consistently describes – only occasionally drive short distances, shop with help from a friend, prepare simple meals (but not well enough to consistently sustain her weight), maintain her appearance (but not well enough to avoid a distressed, ill or unkempt appearance), and care for a pet. For the proposition that Plaintiff is more active, the ALJ marshals Dr. Hyde's consulting report and the treating records from Tri-Town Community Action. See Tr. 16 (ALJ cites Exhibits 15F, 21F and 26F as evidence establishing that Plaintiff can do activities of daily living without difficulty). These sources do not amount to substantial evidence supporting the ALJ's finding.

Dr. Hyde's consulting report (Exhibit 15F) reflects Plaintiff's statement that "she is no longer able to walk, stand or sit for long periods of time without pain or severe muscle spasms, that her typical day is spent at home sleeping or watch television, that she cooks only when necessary, does limited chores and drives only short distances." Tr. 483. Dr. Hyde specifically noted Plaintiff's slow ambulation, tired and unkempt appearance and psychomotor agitation, tendency to become confused, and impaired recent memory. Tr. 483-84. There is no mention of increased activities. Similarly, Nurse Sheehan's notes (Exhibits 21F and 26F) reference Plaintiff's "chronically ill appearing," slow gait, the "worsening of previous symptoms," the

15

"severe/uncontrolled depression/anxiety," Plaintiff's homelessness, and the fatigue that makes it difficult for her to get out of bed; they make no mention of increased activity. Nurse Qamar (Exhibit 21F) observed that Plaintiff seemed malnourished, ill in appearance, with body pain so severe that she was "[u]nable to perform any physical exam . . . pain even with light touch"; there is no reference to any activity. And Dr. Brown (Exhibit 21F) (consistent with her opinion) recorded pain in all trigger points, uncomfortable slow movements, observable muscle spasms and severe limitations in range of motion in the thoracic spine; her treating notes make no reference to activities that are inconsistent with her opinion. See generally Tr. 527-59, 608-23. Nor did the Court's review of the record turn up any evidence suggesting Plaintiff has been more active during the period of alleged disability.[7] In short, the ALJ's finding that there is objective evidence of activities inconsistent with Plaintiff's statements utterly lacks the support of substantial evidence and cannot be sustained.[8]

This analysis also just about clinches Plaintiff third argument of error – it is plain that the ALJ's legally-insufficient finding that Plaintiff is "more active" fatally infected one of his "good reasons" for rejecting Dr. Brown's opinion regarding Plaintiff's functional limitations. See Charpentier, 2014 WL 575724, at *14. The knock-out punch is that the ALJ's other "good reason" for rejecting the Brown opinion – that it is "not consistent with the record as a whole" – is simply incorrect. While the ALJ may be right that Dr. Brown's opinion is inconsistent with the limited portion of the earlier treating record seen by the SSA non-examiners (and therefore is

---

[7] That is, Plaintiff's file is utterly lacking in random references to activities inconsistent with her statements. E.g., Charpentier, 2014 WL 575724, at *3 (claimant who alleged severe pain precluded all sexual activity and camping in the same period sought medical treatment for effects of rampant sexual activity and camping (poison ivy)).

[8] On remand, the ALJ may consider other evidence of record that may bear on the reliability of Plaintiff's subjective statements. For example, the record reflects numerous instances of Plaintiff's failure to follow through on treatment recommendations, particularly for mental health treatment. E.g., Tr. 398 ("stopped seeing her psychiatrist"); Tr. 610 (noting patient failed to follow up on "psych" or "PT" referrals). Yet the record also reflects an explanation – "pt states she misses appointments d/t fatigue and "fibro fog" and "pt now states she is 'afraid of PT.'" Tr. 610, 620.

also inconsistent with the SSA non-examining opinions, which were based on that limited record), it is entirely consistent with all of the contemporaneous records, including not only Dr. Brown's own treating notes and those of the other Tri-Town treating professionals, but also the SSA consulting reports based on the examinations performed by Drs. Hyde and Dr. Regan. Thus, this "good reason" is as unavailing as the other. With no "good reasons" left, what remains is a treating source opinion that appears to be well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the contemporaneous evidence of record. At least as to the period to which it pertains, it may well be entitled to controlling weight. See Konuch, 2012 WL 5032667, at *4-5; 20 C.F.R. § 404.1527(c)(2). All of this should be explored on remand. See Soto-Cedeno v. Astrue, 380 F. App'x 1, 5 (1st Cir. 2010) (remand required because ALJ erroneously fails to include limitations from treating source opinion in RFC used to form hypothetical posed to vocational expert).

## V.     Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner of Social Security (ECF No. 14) be GRANTED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 17) be DENIED. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 30, 2019